# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:16-cv-751-MOC
# (3:13-cr-329-MOC-DCK-1)

| | |
|---|---|
| **DANIEL HAROLD WILLIFORD,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1). The Government has filed a Response, (Doc. No. 3), and Petitioner has filed a Reply, (Doc. No. 4).

## I. BACKGROUND

Petitioner was charged in the underlying criminal case in connection with a Ponzi scheme with: Count (1), securities fraud; Count (2), wire fraud; and Counts (3)-(7), transactional money laundering. (3:13-cr-329, Doc. No. 1). Petitioner pled guilty to Count (1) in exchange for the Government's dismissal of Counts (2)-(7) pursuant to a written plea agreement. (3:13-cr-329, Doc. No. 15). In the written agreement, Petitioner acknowledges that the maximum sentence for the securities fraud count is 20 years' imprisonment, $5,000,000 fine, or both, and up to three years of supervised release. (3:13-cr-329, Doc. No. 15 at 1). He acknowledges that the advisory guidelines will be considered in determining the sentence, and that the Court will impose a sentence within its discretion up to the statutory maximum. (3:13-cr-329, Doc. No. 15 at 2). The parties agreed on a non-binding loss amount of more than $2,500,000 but less than $20,000,000, and retained the

right to seek a variance from the guideline range. (3:13-cr-329, Doc. No. 15 at 2). Petitioner acknowledged the rights he was waiving by pleading guilty. (3:13-cr-329, Doc. No. 15 at 5). He further expressly waived the right to appeal or raise a post-conviction collateral attack on his conviction or sentence except for claims of ineffective assistance of counsel or prosecutorial misconduct. (3:13-cr-329, Doc. No. 15 at 5).

In a written factual proffer, Petitioner admitted that, "[f]rom in or about January 2007 through in or about July 2013, the defendant, [Petitioner] executed what is commonly known as a "Ponzi" scheme to defraud investors by inducing victims in Charlotte, North Carolina, and elsewhere, to invest with … entities … controlled by [Petitioner]." (3:13-cr-329, Doc. No. 18 at 1).

Petitioner came before the Court on July 22, 2014, for a Rule 11 hearing. (3:13-cr-329, Doc. No. 19). He stated under oath that his mind was clear and that he understood he was there to enter a guilty plea which could not later be withdrawn. (3:13-cr-329, Doc. No. 19 at 2). He reviewed and discussed the Bill of Indictment with counsel and discussed the decision to plead guilty. (3:13-cr-329, Doc. No. 19 at 3). He understood the essential elements of the securities fraud offense and the maximum possible penalty. (Id.). Petitioner agreed that he understood the charges and his sentencing exposure, each element of the offense charged, that the Government would be required to prove each element beyond a reasonable doubt were he to plead not guilty, and that the Government would also have to prove that the unlawful acts were committed knowingly, willfully, intentionally, and unlawfully. (3:13-cr-329, Doc. No. 19 at 4). Petitioner acknowledged that he and counsel had discussed the Sentencing Guidelines and how they may apply to his case, that they are advisory, and that the Court could sentence him within the statutory limits notwithstanding the guidelines, and that he may receive a sentence higher or lower than that called for by the

guidelines. (3:13-cr-329, Doc. No. 19 at 5). He understood he has the right to plead not guilty, have a speedy trial before a jury with the assistance of counsel, summon witnesses to testify, and confront witnesses against him. (3:13-cr-329, Doc. No. 19 at 6). He acknowledged that he is, in fact, guilty of the count in the Bill of Indictment to which he is pleading guilty, and that the guilty plea is not the result of coercion, threats, or promises. (3:13-cr-329, Doc. No. 19 at 7). Petitioner confirmed that he read the plea agreement, counsel explained it to him, and he fully understands the terms of the agreement, and he signed it. (Id.). He agreed that there is a factual basis for the plea and that it constitutes a factual basis for his guilty plea. (3:13-cr-329, Doc. No. 19 at 8). His willingness to plead guilty is the result of prior discussions between Petitioner and counsel, he has had ample time to discuss any possible defense with counsel and he has told counsel everything that he wanted counsel to know about the case. (Id.). Petitioner stated that he is entirely pleased with counsel. (Id.). Petitioner confirmed that he knows and understands what he is doing, heard and understood all parts of the proceeding, and wants the Court to accept his plea. (Id.). He did not have any questions, statements, or comments. (3:13-cr-329, Doc. No. 19 at 8-9).

The Court accepted Petitioner's knowing and voluntary guilty plea, adjudicated him guilty of Count (1), and sentenced him to 110 months' imprisonment followed by three years of supervised release, and imposed restitution of $17,915,013.35. (3:13-cr-329, Doc. Nos. 19, 38).

Petitioner filed the instant § 2255 motion to vacate on October 21, 2016, arguing (renumbered): (1) he is actually innocent of violating securities laws; (2) counsel was ineffective for misadvising Petitioner that the short-term notes he sold were securities, which induced him to plead guilty. (Doc. No. 1).

The Government filed a Response arguing that Petitioner's claims fail as a matter of law because the acts to which he pled guilty constitute securities fraud. (Doc. No. 3).

3

In his Reply filed on July 5, 2017, Petitioner argues that the Government does not contest, and therefore concedes, that the short-term instruments at issue are not securities, which confirms that he is being incarcerated for an offense of which he is actually innocent, and that counsel's performance during plea negotiations was constitutionally deficient because there was no factual basis for the plea. (Doc. No. 4). He additionally argues for the first time that counsel provided ineffective assistance at sentencing. (Doc. No. 4 at 2-3).

## II.  SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation

fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689).

The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v.

5

Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

### III. DISCUSSION

**(1) Actual Innocence**

Petitioner contends that he is innocent of the securities fraud to which he pled guilty because the instruments at issue (short-term hard money loans) are not "securities." (Doc. No. 1 at 4).

Although the *pro se* Petitioner casts this claim as one of actual innocence, the substance of his argument is one of insufficient evidence and it is construed as such. See Jackson v. Virginia, 433 U.S. 307 (1979); see also House v. Bell, 547 U.S. 518 (2006) (distinguishing the standard for newly discovered evidence of actual innocence pursuant to Schlup v. Delo, 513 U.S. 298 (1995), from a claim of insufficient evidence pursuant to Jackson); see generally Haines v. Kerner, 404 U.S. 519 (1972) (a *pro se* complaint, however inartfully pled, must be held to less stringent standards than formal pleadings drafted by lawyers).

This claim has been waived by Petitioner's knowing and voluntary waiver of collateral proceedings in which Petitioner expressly gave up the right to raise any claim except for ineffective assistance of counsel or prosecutorial misconduct. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent

presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary). The Court is able to conclude on the record, without an evidentiary hearing, that Plaintiff's substantive attack on his securities fraud conviction has been waived. See Lemaster, 403 F.3d at 221-22 ("in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.").

Moreover, even if this claim was not waived, it would be denied on the merits because Petitioner's admitted acts satisfy the securities fraud statute to which he pled guilty.

Section 10(b) of the Securities Exchange Act makes it:

> unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ..... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b)

For a defendant to be convicted of securities fraud under § 10(b) of the Securities Exchange Act, the United States must prove:

> (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) causation.

Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157 (2008); 15 U.S.C. § 78j(b); see 15 U.S.C. § 78ff; 17 C.F.R. § 240.10b-5.

> A "security" is:
>
> any note, stock, treasury stock, security future, security-based swap, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate of subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

15 U.S.C. § 78c(a)(10).

In determining whether a "note" is a "security," courts apply the "family resemblance" test, which permits the issue to rebut the presumption that a note is a security if it can show the note in question "bear[s] a strong family resemblance" to an item on the judicially crafted list of exceptions, or convinces the court to add a new instrument to the list. Reves v. Ernst & Young, 494 U.S. 56, 67 (1990) (quoting Exchange Nat. Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1137-38 (2d Cir. 1976)). A note is "presumed to be a 'security,' and that presumption may be rebutted only by a showing that the note bears a strong resemblance … to one of the enumerated categories of instrument." Id. The four factors that a court considers in applying the family resemblance test are: (1) the parties' motivations for entering into the transaction; (2) the instrument's plan of distribution; (3) the reasonable expectations of the investing public; and (4) whether some factor such as the existence of another regulatory scheme significantly reduces the instrument's risk, thereby rendering application of the Securities Act unnecessary. Id.; see SEC v.

C.M. Joiner Leasing Corp., 320 U.S. 344, 351, 353 (1943). With regards to the first factor, "[i]f the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a security." Reves, 494 U.S. at 66.

Petitioner argues that the instruments at issue in his case are not "securities" because: (1) the promissory notes were evidence of short-term hard money loans which had a duration of less than nine months; (2) the notes were never marketed to the public, but rather, to private parties (friends and family); (3) the interest payable on the notes was a fixed amount that was not dependent on the venture's profits or losses; and (4) funds were immediately utilized for current transactions. (Doc. No. 1 at 4).

Petitioner's argument is contradicted by the record. He entered a knowing and voluntary guilty plea to the securities fraud charge. In his written factual proffer, Petitioner admitted that he executed a "Ponzi" scheme from January 2007 through July 2013, in which he "defraud[ed] investors by inducing [them] … to invest in … entities … controlled by [Petitioner]." (3:13-cr-329, Doc. No. 18 at 1). During the course of the scheme, he "induced more than two hundred (200) investors, directly and through intermediaries, to invest more than forty-four million dollars ($44,000,000) resulting in millions of dollars of losses to more than one hundred (100) investors." (3:13-cr-329, Doc. No. 18 at 1). He induced these investments by "making false and fraudulent representations, omitting material facts, and telling deceptive half-truths," for instance, "[t]hat investor money would be invested in wireless internet equipment, internet towers, and other facilities and companies – when, in truth and fact, [Petitioner] spent at most approximately 18 percent (18%) of investor money ($7.7 million out of $44 million) as promised." (3:13-cr-329, Doc. No. 18 at 2). Petitioner also "fraudulently obtained victim funds with 'Revenue Sharing

Agreements,' by promising victims that their investment would allow them to receive a portion of the total revenue from a specific project or facility." (3:13-cr-329, Doc. No. 18 at 3).

Petitioner's knowing and voluntary guilty plea and admitted factual proffer support the "securities" element of the securities fraud offense. His present self-serving and unsupported attempt to re-cast the nature of his transactions is rejected. See generally Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d 216, 221–22.

Therefore, even Petitioner had not waived this claim in his knowing and voluntary post-conviction waiver, it would be denied on the merits.

**(2)** **Ineffective Assistance of Counsel: Involuntary Plea**

Petitioner alleges that counsel misadvised him that his actions qualify as securities fraud, and this misadvice rendered his guilty plea involuntary.

In many cases, an evidentiary hearing is required to determine whether or not counsel was ineffective for misadvising a petitioner about a plea offer. See generally United States v. Witherspoon, 231 F.3d 923, 926–27 (4th Cir. 2000); 28 U.S.C.A. § 2255(b); see, e.g., United States v. Ray, 547 Fed. Appx. 343 (4th Cir. 2013) (it was abuse of discretion for failing to conduct an evidentiary hearing on petitioner's claim of ineffective assistance with regards to a plea offer where "[t]he record as it is stands bare" and, other than petitioner's own assertions in his affidavit and pleadings, there was no evidence as to what transpired between petitioner and counsel during the plea negotiations, what advice counsel gave him about the plea offer at issue, and on what basis).[1]

---

[1] Unpublished opinions are not ordinarily accorded precedential value, and are "entitled only to the weight they generate by the persuasiveness of their reasoning." Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (citation omitted)).

In the instant case, however, no evidentiary hearing is required because Petitioner's claims are conclusively refuted by the record.

Petitioner's admitted actions qualify as securities fraud for the reasons set forth in Section III(1), *supra*. Therefore, counsel's advice to plead guilty to Count (1) was not deficient.

Moreover, Petitioner has failed to demonstrate prejudice. His claim is facially insufficient in that he has failed to allege that he would not have pled guilty but for counsel's alleged misadvice. See Hill, 474 U.S. at 59; Meyer, 506 F.3d at 369. Any inference to that effect is unavailing because he there is no reasonable probability he would not have pled guilty but for Counsel's alleged misadvice. The Government dismissed six additional serious charges and Petitioner received a three-level reduction in his offense level for acceptance of responsibility because of his plea. Further, Petitioner does not claim he was not guilty of the dismissed charges and his admitted factual proffer would belie such a suggestion. See (3:13-cv 329, Doc. No. 18 at 2-4) (describing how Petitioner solicited victim money then distributed it in Ponzi payments to previous investors, withdrew it, then diverted investor money to support his lifestyle by, among other things, paying credit card bills, funding educational expenses, and cash withdrawals). Therefore, he has failed to demonstrate that counsel's alleged deficient performance prejudiced him.

Petitioner has failed to satisfy either prong of Strickland's two-part test, and his claim that counsel's misadvice rendered his guilty plea involuntary, is denied.

**(3)** **Ineffective Assistance of Counsel: Sentencing**

Petitioner argues for the first time in his Reply that counsel provided ineffective at sentencing.

A one-year statute of limitation applies to motions to vacate under § 2255, which runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

If a defendant does not file a direct appeal, his conviction becomes final fourteen days from the date when the judgment was entered on the criminal docket when the time for filing a notice of appeal expires. See Fed. R. App. P. 4(b)(1), (b)(6); United States v. Osborne, 452 Fed. Appx. 294, 295-96 (4th Cir. 2011).

For an untimely claim relate back to the original timely-filed pleading, it must be shown that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In the context of a habeas motion, "conduct, transaction, or occurrence" does not mean the same "trial, conviction, or sentence," such that any claim that relates to the prior conviction or sentence challenged in a habeas motion is considered timely, no matter how long after the original motion it is filed. Rather, a proposed amendment relates back to the date of the original motion if it "state[s] claims that are tied to a common core of operative facts." Mayle v. Felix, 545 U.S. 644, 664 (2005).

Petitioner's judgment was entered in the underlying criminal case on November 2, 2015. (3:13-cr-329, Doc. No. 38). He did not appeal. Therefore, his conviction and sentence became final on November 16, 2015. Petitioner timely filed the original § 2255 Motion to Vacate less than one

12

year later on October 21, 2016. In it, he raised two claims: (1) actual innocence; and (2) involuntary plea due to misadvice of counsel. Petitioner raised the instant claim that counsel provided ineffective assistance at sentencing in his Reply that was filed on July 5, 2017. The ineffective assistance sentencing claim is completely new and does not relate back to either of the two grounds Petitioner raised in his timely Motion to Vacate. Petitioner does not allege that any exception to the one-year statute of limitations applies to his new claim.

Therefore, the new claim of ineffective assistance of counsel with regards to sentencing is dismissed as time-barred.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Vacate is denied and the new claim Petitioner attempted to raise in his Reply is dismissed with prejudice as time-barred.

**IT IS, THEREFORE, ORDERED** that:

1. The Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED,** and the claim Petitioner raises in the Reply, (Doc. No. 4), is **DISMISSED** with prejudice.

2. IT IS FURTHER ORDERED that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive

procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: March 13, 2018

Max O. Cogburn Jr
United States District Judge